LANDRY, Judge.
Defendant, Cane Air Aviation (Cane Air), appeals judgment granting plaintiffs recovery for crop damage to plaintiffs’ gardens found by the trial court to have been caused by Cane Air’s spraying of sugar cane on Himalaya Plantation, which plantation was leased to Ashley Arcement who ordered spraying of his cane crop thereon. American Employers Insurance Company (American), the landowner’s liability insurer, was the sole initial defendant, Cane Air being subsequently impleaded herein. American has third partied Cane Air pursuant to an indemnity agreement between Cane Air and the owner of the land involved. The trial court rendered judgment in favor of plaintiffs against American and in favor of American against Cane Air. We affirm.
Cane Air contends: (1) Plaintiffs failed to establish causation of damage in that there is no proof that spraying by Cane Air caused the damage to plaintiffs’ gardens; and, (2) Plaintiffs did not prove their damages with reasonable certainty as required by law.
On August 3 and 5, 1974, Arcement had Cane Air spray his cane crop with 2-4,D to kill tye vines and other broad leaf weeds that had sprung up among the sugar cane. On the morning of August 5, 1974, the operation commenced at about 8:30 A. M., and lasted for approximately an hour. Using a helicopter, Cane Air’s pilot made three or four trips, flying in a north-south pattern. Plaintiffs’ properties are situated from one-quarter to one-half mile south of Himalaya. At about noon on August 5, 1974, one plaintiff observed evidence of damage to her garden. By the following day, all plaintiffs noted signs of damage in varying degrees. All of plaintiffs’ gardens were ruined. The gardens, all of the late spring variety, each contained some combination of okra, beans, corn, peas, peppers, tomatoes and pumpkins. The damage manifested itself in the form of curling, yellowing and wilting of leaves and discoloration and withering of fruit. Plaintiffs notified Cane Air immediately. Cane Air sent a representative who talked with at least one plaintiff and viewed his garden.
Cane Air’s pilot and owner testified in essence that the helicopter was equipped with the latest microfilm boom which allowed no drift. They explained that the boom was mounted ahead of the pilot and emitted spray beneath the helicopter “like dragging a paint brush behind the machine”. They added that there could have been no drift onto plaintiffs’ lands because the spray is emitted in liquid drops and there was no wind on the day in question. The pilot testified that he turned in tight circles at the end of each run and that the helicopter did not fly over any plaintiff’s land. He also testified that he shut off the spray before making each turn to avoid spraying adjacent lands. Cane Air’s witnesses maintain that an absence of claims from intervening landowners is proof that the spraying operation did not cause plaintiffs’ losses. They also suggest that spraying on a canal right of way to the rear of plaintiffs’ lands may have been the cause of the damage.
*608 Plaintiffs produced witnesses who observed the helicopter flying over their properties and those of other plaintiffs on the day in question. At least one such witness testified that he saw spray coming from the helicopter as it flew over his land. He described the spray as “white smoke”, and testified that it left a trail of damaged foliage over woods and pastures where the helicopter turned. Plaintiffs’ witnesses negated spraying of the canal within several months prior to August 5, 1974.
As contended by plaintiffs, liability herein is predicated on La.C.C. Article 667, which provides:
“Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.”
The foregoing article imposes liability without fault—in other words, strict liability. The damage caused in this instance falls squarely within the protection afforded adjoining landowners by Article 667. Gotreaux v. Gary, 232 La. 373, 94 So.2d 293 (1957).
The burden of proof incumbent on plaintiffs does not require disproval of every reasonable alternative cause of damage. Plaintiffs are required, however, to prove cause in fact by a preponderance of evidence which burden is met when, taking the evidence as a whole, plaintiffs’ proof shows that the fact of causation sought to be proved is more probable than not. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971); Hanover Insurance Company v. Jacobson-Young, Inc., 294 So.2d 564 (La.App. 4th Cir. 1974); Carpenter v. National Food Stores, Inc., 278 So.2d 570 (La.App. 1st Cir. 1973).
In this instance, Cane Air admits its helicopter sprayed on the day in question and that its helicopter flew a pattern which could have taken it over plaintiffs’ lands. Although plaintiffs could not positively identify the helicopter as belonging to Cane Air, they testified unequivocally that a helicopter flew over their lands on the same day that Cane Air sprayed neighboring lands. No other helicopter was sighted in the area on the day in question. Plaintiffs also established that the damage to their crops was a classic example of the type of damage done by 2-4,D to vegetation. Plaintiffs also established that damage of the type noted usually manifests itself any time from a few hours to several days following exposure to 2-4,D. The trial court found cause in fact connexity between Cane Air’s spraying and the cause of plaintiffs’ damages. We find credible evidence in the record to support this determination, if believed by the trier of fact. Under the circumstances, we affirm the finding. Canter v. Koehring Company, 283 So.2d 716 (La.1976).
In proof of damages, plaintiffs offered the testimony of an experienced truck farmer who estimated production amounts of each vegetable predicated on rows of certain lengths or number of plants. The witness, who was qualified as an expert, visited and walked in one garden. Because of inclement weather, he viewed the remaining gardens from his automobile on the highway. He found all gardens to be about equal in productivity and the extent of damage in each to be total. The witness, who had sold his own vegetables to chain stores and the French Market in New Orleans for many years, quoted French Market prices as of August 5,1974. Aware that all plaintiffs mostly consumed their own crops, he quoted what he deemed minimum wholesale French Market prices. Based on the expert’s production estimates, plaintiffs measured their rows, counted their plants, determined production figures and applied the expert’s market prices. All plaintiffs testified in effect that their gardens were just coming into production and that their respective crops were a total loss. The trial court discounted their respective figures by 20% upon determining that most of the crops would have been home consumed.
We find the trial court’s assessment of damages to be reasonable under the circumstances and well within the limits of *609 discretion permitted by La.C.C. Article 1934(8) and Coco v. Winston Industries, 341 So.2d 332 (La.1977).
The judgment is affirmed at Appellant’s cost.
Affirmed.